## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGO A. WEEMS, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION |
| CHILDREN'S HOSP. OF PHILA., et al., | NO. 22-3961 |
| *Defendants.* | |

**PAPPERT, J.**                                                    **December 28, 2023**

### MEMORANDUM

Margo Weems filed this lawsuit on behalf of herself and, ostensibly, her minor daughter TMW against fifty-five people and entities.[1]  Her complaint is a lengthy and rambling narrative that seems to pertain to the custody of her child.  Weems alleges that in September 2016, she brought her daughter to Childrens' Hospital of Philadelphia with a fever.  CHOP staff, apparently believing Weems had neglected the child and had "mental issues," contacted the City of Philadelphia's Department of Human Services.  DHS initiated dependency proceedings against Weems in the Juvenile Division of the Philadelphia County Court of Common Pleas ("family court"). The family court terminated Weems's parental rights in April 2019, but the Pennsylvania Superior Court subsequently vacated the termination order.  The proceedings in family court apparently remain ongoing.

---

[1]       Weems cannot assert claims on her daughter's behalf because she is not a lawyer.  *Pro se* litigants who are not attorneys may not represent other people, including their children, in federal court.  *Osei-Afriye v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991).  Any claims Weems purports to bring on TMW's behalf are dismissed without prejudice.

Weems believes all defendants conspired in various ways to take her daughter away from her, violating her parental rights under the First, Second,[2] Fourth, Fifth and Fourteenth Amendments and, because she is of "Native American heritage," under the Indian Child Welfare Act ("ICWA").  She also seems to assert various state law claims. Seven groups of Defendants have filed motions to dismiss, (ECF Nos. 32, 43, 44, 45, 47, 57 and 61), to which Weems has now responded.  (ECF Nos. 84, 85, 86, 87, 88, 89, 90 and 97.)  The Court resolves the motions in this Memorandum as follows and specifies in the accompanying Order how Weems, if she chooses to do so, may amend her Complaint.

I

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead factual allegations sufficient to state a claim that is facially "plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense."  *Schuchardt v. President of the United States*,

---

[2]     In her responses to some of the motions, Weems effectively withdraws her Second Amendment claims, acknowledging she did not intend to assert them.  (ECF Nos. 86, 97.)  These clams are dismissed with prejudice.

839 F.3d 336, 347 (3d Cir. 2016) (quotation omitted).  In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).  However, "conclusory assertions of fact and legal conclusions" are not entitled to the same presumption of truth. *Schuchardt*, 839 F.3d at 347.  This presumption attaches only to those allegations supported by sufficient facts.  *Id.* (quotation omitted).

Because Weems is proceeding *pro se*, the Court liberally construes the Complaint.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

## II

### A

Weems cannot state a claim under the Fourth Amendment, which protects against unreasonable searches and seizures.  *United States v. De Castro*, 905 F.3d 676, 678 (3d Cir. 2018).  Although courts have allowed parents to assert Fourth Amendment claims on their children's behalf, *see, e.g.*, *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999); *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997), again, Weems may not do so as a *pro se* litigant.  *See Osei-Afriye*, 937 F.2d at 882-83; *see also Gilyeat v. Morales*, No. 13-2496, 2015 WL 505801, 2015 U.S. Dist. LEXIS 14399, at *6-7 (D. Kan. Feb. 6, 2015).  Nor can Weems separately assert her own Fourth Amendment claim based on TMW's alleged "seizure."  *See K.K. v. Berks Cnty.*, No. 15-0475, 2016 WL 1274052, 2016 U.S. Dist. LEXIS 44257, at *30 n.9 (E.D. Pa. Mar. 31, 2016).

3

B

Although Weems does not specify which provision of the Fifth Amendment she alleges the defendants violated, she cannot state a claim under any of them.  The Fifth Amendment guarantees criminal defendants a right to indictment by a grand jury in federal prosecutions, *United States v. Greenspan*, 923 F.3d 138, 152-53 (3d Cir. 2019) (quotation omitted), and prohibits the government from prosecuting or punishing the same criminal defendant more than once for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  The Fifth Amendment further prevents the government from compelling people to incriminate themselves, *Renchenski v. Williams*, 622 F.3d 315, 332 (3d Cir. 2010), but Weems has not alleged she was compelled to provide any incriminating information.  And in any event, family court proceedings are civil rather than criminal in nature, so these rights do not apply.  *Interest of J.T.*, 983 A.2d 771, 774 (Pa. Super. Ct. 2009).

On the civil side, the Fifth Amendment prohibits the taking of private property for public use without just compensation.  *Nekrilov v. City of Jersey*, 45 F.4th 662, 669 (3d Cir. 2022) (quotation omitted).  While Weems alleges her child should not have been taken from her, children do not fall within the definition of "property" under the Takings Clause.  *Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628, 636 (E.D. Pa. 2010).  Finally, because Weems has sued only state and private actors, she cannot state a claim against them for violations of the Fifth Amendment's Due Process Clause, which applies to actions taken by the federal government, rather than state or local governments.  *B&G Constr. Co. v. Dir., OWCP*, 662 F.3d 233, 246 n.14 (3d Cir. 2011); *Duffy v. Cnty. of Bucks*, 7 F. Supp. 2d 569, 576 (E.D. Pa. 1998).

4

C

Finally, Weems claims the family court "denied me my Native American Heritage," violating her rights under ICWA.  (Compl. at 15.)[3]  But based on the Complaint's allegations, neither Weems nor her daughter (to the extent a claim could be brought on her behalf) are protected by ICWA.   The statute defines an "Indian child" as an unmarried person under eighteen who is either a "member of an Indian tribe," or eligible for membership in an Indian tribe and is "the biological child of a member of an Indian tribe." *Haaland v. Brackeen*, 143 S. Ct. 1609, 1623 (2023); 25 U.S.C. § 1903(4). Similarly, "Indian" means "any person who is a member of an Indian tribe, or who is an Alaska Native and a member of a Regional Corporation as defined in section 7 of the Alaska Native Claims Settlement Act." 25 U.S.C. § 1903(3).  Weems's passing reference to her "Native American Heritage" does not establish that either she or her child are covered by the statute.

III

Because she alleges violations of her constitutional rights, Weems appears to bring a claim under 42 U.S.C. § 1983.  Section 1983 imposes liability on those who deprive others of federal constitutional or statutory rights "under color of any statute, ordinance, regulation, custom, or usage," of a state.  42 U.S.C. § 1983; *see also Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005).  To state a claim under Section 1983, Weems must allege "two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived [her] of rights, privileges, or immunities secured by the Constitution or laws of the United

---

[3]      Page numbers are those assigned by ECF unless otherwise specified.

States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). Additionally, Weems must allege the defendants' "personal involvement" in the alleged wrongdoing. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).

Construing her complaint liberally, Weems may be alleging that various defendants violated her parental rights under the Fourteenth Amendment's Due Process Clause. Parents have a constitutionally protected liberty interest in the "custody, care and management of their children." *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997). Conduct violates this liberty interest if it reaches "a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 241 (3d Cir. 2013) (quoting *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999)). A state "has no interest in protecting children from their parents unless it has some reasonable and articulable evidence" creating a reasonable suspicion that the child needs protection from abuse or neglect. *Croft*, 103 F.3d at 1125. Reasonable suspicion is lacking where a child welfare agency has "consciously disregarded a great risk that there had been no abuse" or neglect. *Ziccardi v. City of Phila.*, 288 F.3d 57, 66 (3d Cir. 2002).

IV

Weems's constitutional claims against several defendants fail because she has not adequately alleged their personal involvement. Defendants in civil rights actions "must have personal involvement in the alleged wrongs." *Rode*, 845 F.2d at 1207. Their liability cannot be "predicated solely on the operation of *respondeat superior*." *Id.* The plaintiff "must aver facts to show the defendants' personal involvement in the

alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga*, 806 F.3d at 222.

Weems alleges nothing whatsoever against several defendants. Benita King, Carla N. Gardner, Paulette Matthews, Khadra Searles, Jonathan Houlon, Paul McLaughlin, Cynthia Figueroa, Kimberly Ali, Jennifer Berenton, Madeline Bell, and Judges Margaret T. Murphy, Walter J. Olszewski and Daine Grey, Jr are named as defendants but never mentioned in the Complaint.[4] Weems obviously fails to state a claim against these defendants. Weems also names CHOP itself but does not say which individual defendants are responsible for any wrongful acts or why CHOP is vicariously liable for them.[5] Weems's claims against all of these defendants, except Murphy, Olszewki and Grey Jr., are dismissed without prejudice. Any claims against the three judges arising out of their judicial acts are dismissed with prejudice because they are

---

[4]     To the extent Weems includes any factual allegations in her reply briefs, the Court cannot consider them. "[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss." *Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys.*, 837 F.3d 378, 383 (3d Cir. 2016) (cleaned up) (quotation omitted). Weems may assert additional facts in an amended complaint should she choose to file one.

[5]     Madeline Bell cannot be held liable, solely by virtue of her position as CHOP's President and CEO, for any constitutional violations her subordinates allegedly committed. The same goes for CHOP itself. Two theories of supervisory liability exist in the Section 1983 context. Under the first, a supervisor can be liable if they "established and maintained a policy, practice or custom" which directly caused the harm. *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (cleaned up) (quotation omitted). Under the second theory, a supervisor can be liable if they "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violation." *Id.* at 129 (quotation omitted). Weems alleges no facts which could support either theory.

entitled to absolute immunity for the performance of judicial acts. *See infra* Section VI.A.

## V

Weems also fails to state a claim against the City of Philadelphia because she has not alleged her rights were violated because of an unlawful policy or custom. She sues "City of Philadelphia: Office of City Solicitors and Dept. of Human Services." (Compl. at 3, ECF No. 2.) But she cannot sue these departments under Section 1983 because city agencies are not separate legal entities from the City of Philadelphia itself. *Burton v. City of Phila.*, 121 F. Supp. 2d 810, 812 (E.D. Pa. 2000) (claims against DHS must be brought against the City); *Groce v. City of Phila. Law Dep't*, No. 21-5132, 2022 WL 493418, 2022 U.S. Dist. LEXIS 28550, at *8-9 (E.D. Pa. Feb. 17, 2022) (claims against the Office of the City Solicitor must be brought against the City). To proceed with these claims, Weems must sue the City instead.

To state a claim for municipal liability under Section 1983, Weems must allege that the City's unlawful policies or customs caused the violation of her rights protected by the Constitution or laws of the United States. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard," she must "identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). She must also allege the policy or custom was the "proximate cause" of her injury. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). She may do so by demonstrating "an 'affirmative link' between the policy or custom" and the injury she alleges. *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). Because her Complaint makes no such allegations, Weems

fails to state a Section 1983 claim against the City.  Her claims against DHS and the Office of the City Solicitor are accordingly dismissed with prejudice and her claim against the City is dismissed without prejudice.

## VI

Weems's claims against several other defendants are barred by judicial and witness immunity.

### A

First, Weems alleges Judge Vincent Furlong, who presided over her family court proceedings, conspired with other defendants and otherwise treated her unfairly, such as by violating her freedom of speech by stopping her from "speaking up" in court.  But Judge Furlong is not liable for monetary damages or any injunctive relief because judges are absolutely immune from liability for the performance of their judicial acts. *Mireless v. Waco*, 502 U.S. 9, 12-13 (1991).  A judge does not lose this immunity even if his action "was in error, was done maliciously, or was in excess of his authority." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (*per curiam*) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-67 (1978)).  Judges retain this immunity even when accused of acting as part of a conspiracy.  *See Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980); *Tarapchak v. Lackawanna Cnty.*, 173 F. Supp. 3d 57, 72 (M.D. Pa. 2016). Judges can only be held liable for their judicial acts when they have acted "in the clear absence of all jurisdiction."  *Azubuko*, 443 F.3d at 303 (cleaned up) (quotation omitted). All of Weems's allegations against Judge Furlong relate to actions he took in his capacity as a judge and any claims against Judge Furlong are dismissed with prejudice.

B

Weems cannot state a claim against Dr. Joseph Foote because he is entitled to judicial and witness immunity, and Dr. Jennifer Cole-Pucci is entitled to judicial immunity.

People performing functions "integral to the judicial process" are entitled to absolute judicial immunity. *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). This immunity is "considered necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Id.* (quoting *McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992). People who perform "investigative or evaluative functions" to assist a court in its decision-making process are entitled to absolute immunity. *Id.*

All of Weems's allegations regarding Foote involve his performance of functions "integral to the judicial process." *Id.* Weems alleges Foote evaluated her pursuant to a court order and changed his initial diagnoses "as directed by the Judge." (Compl. at 13.) By "completing [a psychiatric] exam and furnishing a written report to the court," Foote was "functioning as an arm of the court," and is therefore entitled to absolute judicial immunity. *See Hughes v. Long*, 242 F.3d 121, 127-28 (3d Cir. 2001) (quotation omitted).

Alternatively, Foote's "report and recommendation to the court, made at the court's direction," constitutes "testimony protected by absolute witness immunity." *McArdle*, 961 F.2d at 1085. "Witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony." *Hughes*, 242 F.3d at 125. Weems's claims against Foote are dismissed with prejudice.

10

For the same reason, Cole-Pucci is also entitled to immunity for her testimony before the family court.  Weems alleges that after another witness lied about her in court, Cole-Pucci accused Weems of visiting her daughter without permission.  (Compl. at 17.)  Although Weems claims Cole-Pucci only made this accusation after Judge Furlong did, absolute witness immunity "serves as a shield even against allegations of perjury and conspiracy."  *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 664 (E.D. Pa. 2014) (citing *McArdle*, 961 F.2d at 1085).

Weems further alleges Cole-Pucci recommended Weems and her sister participate in family counseling.  (Compl. at 17.)  It is not clear whether she made this recommendation before the family court or in some separate case management capacity.  While Cole would not be entitled to immunity for making this recommendation if she did not do so as a witness or pursuant to a court order, making such a recommendation, without more, does not give rise to a constitutional violation.  Weems's claims Cole-Pucci are dismissed without prejudice.[6]

### VII

### A

Weems's constitutional claims against several other defendants fail because she has not sufficiently alleged they are state actors.  Again, to state a claim under Section 1983, Weems must allege "that the conduct complained of was committed by a person acting under color of state law."  *Schneyder*, 653 F.3d at 319.  In a Section 1983 claim, a

---

[6]     Because it is uncertain what capacity Cole-Pucci was acting in when she made this recommendation, this allegation fails because of factual insufficiency rather than immunity.  The Court therefore dismisses Weems's claims against Cole-Pucci without prejudice.

private party is a state actor if "the actor is so integrally related to the state that it is fair to impute to the state responsibility for the action." *Leshko*, 423 F.3d at 340.

The Third Circuit recognizes "three broad tests" to determine whether state action exists. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). These tests are "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (cleaned up) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)). The inquiry under any of the three tests is fact specific. *Id.* (quotation omitted). The relevant question is "not whether the private actor and the state have a close relationship generally, but whether there is such a close nexus between the [s]tate and *the challenged action* that seemingly private behavior may be fairly treated as that of the [s]tate itself." *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (emphasis in original) (quotation omitted).

## B

Weems includes as defendants CHOP, CHOP physicians Michelle Lambert, Helge Harthung and Denise Fizpatrick, and CHOP social workers Trudy Johnson and Jodi Houlon.

Weems alleges Johnson incorrectly told others that Weems said she was an Iraq war veteran. (Compl. at 9.) Harthung also allegedly said he did not believe Weems was capable of giving TMW her medication, and later gave TMW an excessive dose of hydroxyurea to make it look like Weems had "caused her to become sicker." (*Id.*)

Harthung and Fitzpatrick allegedly spread rumors about Weems and TMW throughout CHOP, and Lambert allegedly "made a comment" that TMW "handles her own diarrhea." (*Id.* at 11.)   Weems contends Lambert intentionally misrepresented her statement that TMW used the bathroom independently to make her appear "out of touch with reality". (*Id.*)  Weems alleges these defendants made these statements "to defame my name [and] assassinate my character." (*Id.*)

Additionally, she alleges Houlon refused to provide TMW dermatology services and later "falsified documents" to make it look like she had made the referral.  (*Id.* at 9.)  Houlon also allegedly spread rumors at CHOP about Weems's mental health and falsified information in her medical record.  (*Id.*)  Finally, Houlon allegedly called DHS to file a report against Weems.  (*Id.* at 11.)[7]  When she was told that the information she gave DHS was "not enough to open an investigation," she "responded that they were going to make it enough."  (*Id.*)  CHOP and DHS "then colluded on how best to take [TMW]" from Weems.  (*Id.*)  It is unclear whether, in addition to state tort claims, Weems intends to pursue a section 1983 claim against these defendants.

To the extent she does, these allegations are insufficient to establish state action under any of the three tests.  First, none of the functions allegedly performed by these defendants have traditionally been "the *exclusive* prerogative of the [s]tate." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (emphasis in original) (quotation omitted). "[T]he provision of hospital services is not a traditional public function exclusively reserved to the state." *Klavan v. Crozer-Chester Med. Ctr.*, 60 F. Supp. 2d 436, 441 n.5

---

[7]     Weems identifies the CHOP employee who called DHS as "CHOP SW Jodi Watsons" and "CHOP SW Jodi Watson." (Compl. at 11.)  Because Houlon and "Watson/Watsons" have the same job title and first name, and because Weems does not include a Watson or Watsons in her list of defendants, Weems may have referred to Houlon by the wrong name in parts of the Complaint.

(E.D. Pa. 1999); *Shannon v. Shannon*, 965 F.2d 542, 547 (7th Cir. 1992) (same); *see also A.L. v. Eichman*, 376 F. Supp. 3d 547, 558-60 (E.D. Pa. 2019) (concluding plaintiff failed to establish that "child abuse investigation has been traditionally the exclusive prerogative of the state").

Weems also has not alleged any of these defendants acted with the help of or in concert with state officials. *See Kach*, 589 U.S. at 646. This analysis follows a two-pronged approach. The Court first determines "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority," and next determines "whether the private party charged with the deprivation could be described in all fairness as a state actor." *Mark*, 51 F.3d at 1143 (emphasis omitted) (quotation omitted). Weems's allegations fail under the first prong. The inquiry here is whether the private person acted under their own authority or pursuant to the state's. *Id.* at 1144. Weems alleges no facts indicating Lambert, Johnson, Harthung and Fitzpatrick's took these actions of anything but their own volition.

Weems also does not sufficiently allege Houlon acted in concert with DHS because she has not alleged enough facts to show a conspiracy. "[A] private entity acts in concert with state officials when it conspires with those officials" to violate federally protected rights. *MGJ v. Sch. Dist. of Phila.* No. 17-138, 2017 WL 2277276, 2017 U.S. Dist. LEXIS 80117, at *37 (E.D. Pa. May 25, 2017) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, (1970)). To adequately allege a conspiracy to violate her civil rights, Weems "must assert facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir.

2010).  "The inference of agreement is paramount: to constitute a conspiracy, there must be a meeting of the minds." *Zenquis v. City of Phila.*, 861 F. Supp. 2d 522, 529 (E.D. Pa. 2012) (cleaned up) (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008).

Here, Weems alleges that after Brian Bell, a DHS caseworker, told Houlon he did not have enough information to justify opening an investigation, Houlon told Bell that "they were going to make it enough."  (Compl. at 11.)  CHOP and DHS then allegedly "colluded on how best to take" TMW from Weems.  (*Id.*)  This conclusory statement is not a sufficient factual allegation, and Houlon's statement, standing alone, does not show a meeting of the minds.  *Iseley v. Bucks Cnty.*, 549 F. Supp. 160, 168-69 (E.D. Pa. 1982) ("complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed").

For the same reasons, Weems also does not allege "the [s]tate has so far insinuated itself into a position of interdependence" with these defendants "that it must be recognized as a joint participant in the challenged activity."  *Kach*, 589 F.3d at 646.  Under this test, state action only exists if "there is a sufficiently close nexus between the state and the *challenged* action" such that "it can be said that the [s]tate is *responsible for the specific conduct* of which the plaintiff complains."  *Id.* at 648 (emphasis in original).  Because she does not adequately allege state involvement in these defendants' actions, she has not plausibly alleged any are state actors for purposes of Section 1983.  Her claims against them are dismissed without prejudice.

VIII

Weems's claims against several other defendants fail because she does not allege enough facts to plausibly allege they violated her rights.

A

First, Weems claims that Dr. Noa Glick evaluated TMW "at the start of this experience," and noted she was "happy & intelligent." (Compl. at 17.)  TMW also told Glick that Weems "always treated her nice," and otherwise indicated she was "properly cared for and loved."  (*Id.*)  While Weems further claims TMW has since developed mental health issues and learning disabilities, she makes no further factual allegations involving Glick, and never claims Dr. Glick did anything to violate her rights.[8]  Without more, these facts cannot give rise to a constitutional violation. Weems's claims against Glick are dismissed without prejudice.

B

For similar reasons, Weems fails to state a claim against Caroline Curley, an attorney for the City Solicitor's Office.  Weems claims that on her "second court date[,] "City of Phila. City Solicitor Caroline Curley asked [Weems] if [she] was the former employ of DHS Youth Study Center." (Compl. at 13.)  Weems said yes, and "[i]t was then that the City of Phila began its Retaliation Practices." (*Id.*)  She claims "[t]hey disregarded favorable parts of her history and misconstrued facts about her past to create a narrative that Weems was an unfit parent.  (*Id.* at 13-15.)  It is unclear who Weems refers to, and whether this group of people includes Curley.  Standing alone, an

---

[8]      Again, the Court cannot consider any additional facts raised in Weems's reply briefing. *Carpenters Health & Welfare Fund*, 837 F.3d at 383.  Weems may include these allegations in an amended complaint.

16

allegation that Curley asked Weems a single question about her employment history does not plausibly show she did anything to violate Weems's parental rights.

Moreover, even if these other allegations are attributed to Curley, she is entitled to immunity because "child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state are entitled to absolute immunity from suit for all of their actions in preparing for and prosecuting such dependency proceedings." *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 488-89 (3d Cir. 1997); *see also B.S. v. Somerset Cnty.*, 704 F.3d 250, 262 (3d Cir. 2013) (same). Weems's claims against Curley all arise out of statements she made during the family court proceedings and are accordingly dismissed with prejudice.

C

Weems also brings claims against Carson Valley Children's Aid, a nonprofit organization that contracts with DHS, and Carson Valley employee Denise Antrom. But Weems's allegations against these defendants do not plausibly show they violated Weems's parental rights. It is unclear what Weems says Carson Valley and Antrom did or didn't do. She does not allege they did anything to separate her child from her or otherwise interfere with her parental rights or custody. She also does not allege either defendant played a role in initiating the family court proceedings.

Weems contends Carson Valley was supposed to provide her exterminator services, but that Antrom, a Carson Valley employee, "said the price was too high [and] DHS would not pay for it." (Compl. at 11.) Antrom also allegedly requested that Weems receive a mental health evaluation, which Weems declined because she had limited time as a single mother. (*Id.*) Weems claims she did not know "that the

17

exterminator service being provided would be depending on whether or not I was evaluated for Mental Health," or that her child "would be taken if I did not do exactly what I was order[ed] to do," since paperwork she received stated "that all of it was voluntary [and] I could discontinue services at any time." (*Id.*)

Weems alleges her sister was doing Antrom's hair for free. (Compl. at 11.) She further claims her sister intentionally brought bedbugs and fleas into her home and attempted to take TMW from her home without Weems's permission. (*Id.*) While it appears Weems may be insinuating Antrom and her sister were working against her in some way, this portion of the Complaint is unclear. Without further allegations, the Court is unable to identify any "conscience shocking" behavior giving rise to a substantive due process violation. *Miller*, 174 F.3d at 374-75. Weems's claims against Carson Vallley and Antrom are dismissed without prejudice.

IX

Weems's claim that DHS caseworker Brian Bell violated her parental rights is barred by the statute of limitations. Again, Weems alleges Bell told Houlon that the information she gave him was not enough for DHS to open an investigation. (Compl. at 11.) Houlon allegedly "responded that they were going to make it enough." (*Id.*) Weems does not explain whether, or how, any agreement to this effect was formed. But she does allege Bell later conducted a walk-through of her home and diagnosed Weems as delusional without evaluating her. (*Id.*) Weems claims Bell used this diagnosis to obtain a subpoena ordering her to appear at family court. (*Id.* at 11-13.) The gist of Weems's claim appears to be that Bell investigated Weems even though he did not have enough information to justify that decision, falsely diagnosed her as delusional, and

used this diagnosis in order to initiate child custody proceedings against her.  During the first family service plan meeting Weems attended, Bell allegedly threatened her, telling her she was "going to regret this and he was going to make sure [she] did."  (*Id.* at 11.)

While a liberal construction of these allegations arguably shows Bell took actions to remove Weems's child from her custody "without an objectively reasonable suspicion" of neglect, *Mulholland*, 706 F.3d at 241 (quotation omitted), the Court need not decide whether these facts give rise to a constitutional violation.  When it appears on the face of the complaint that the statute of limitations has expired, the statute can be raised as a defense in a motion to dismiss.  *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).  In Section 1983 claims, the statute of limitations is "that which the [s]tate provides for personal-injury torts."  *Wallace v. Keto*, 549 U.S. 384, 387 (2007).  Pennsylvania's statute of limitations for personal injury actions is two years.  *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003); 42 Pa. C.S. § 5524(1), (7).  A Section 1983 claim accrues when the plaintiff "knew or should have known of the injury upon which [its] action is based."  *Wisniewski*, 857 F.3d at 157-58 (quoting *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 559 (3d Cir. 1998)).

Here, Weems alleges in the Complaint that she took her child to CHOP in September 2016 and that the family court terminated her parental rights in April 2019. (Compl. at 9, 15.)  All of Bell's alleged misconduct occurred before the family court proceedings began.  Weems should have known of her injury, at the latest, when her parental rights were terminated in 2019.  Because she did not file this lawsuit until October 2022, more than two years after Bell's allegedly unconstitutional acts, her

Section 1983 claim against Bell appears to be time-barred, though the Court will dismiss it without prejudice in the event Weems can allege facts which could establish a basis for equitable tolling.[9]  *See Brandon v. House*, No. 19-5702, 2019 WL 6715455, 2019 U.S. Dist. LEXIS 212249, at *5 (E.D. Pa. Dec. 10, 2019).

X

Because the Court has dismissed all claims over which it has original jurisdiction,[10] it declines to exercise supplemental jurisdiction over any purported state law claims.  28 U.S.C. § 1367(c)(3); *Fuzy v. Westfield Bd. of Educ.*, No. 19-18434, 2022 WL 1284731, 2022 U.S. Dist. LEXIS 78108, at *37 (D.N.J. Apr. 29, 2022).

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.

---

[9]      Bell may also be immune to liability for his initiation of child custody proceedings.  *Ernst*, 108 F.3d at 490, 495 (social workers are absolutely immune from liability for "preparing for, initiating, and prosecuting dependency proceedings").  This absolute immunity, however, does not extend to "'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding."  *Id.* at 497 n.7.

[10]      Weems also seeks broad injunctive relief, primarily requesting her child be returned to her "without the threat of DHS involvement."  (Compl. at 5.)  But injunctive relief is a remedy, not an independent cause of action.  *Houser v. Feldman*, 600 F. Supp.3d 550, 572 (E.D. Pa. 2022).